# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KRISTEN LEANN HORTON, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:19CV1193 |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Plaintiff Kristen Leann Horton's amended unopposed motion to approve settlement agreement, including award of attorneys' fees and costs. (Docket Entry 98.)[1] For the reasons that follow, the Court recommends that Plaintiff's motion be granted.

### I.  FACTUAL BACKGROUND

As set forth in the Complaint, Plaintiff Kristen Leann Horton worked as an Operations Manager ("OM") for Defendant Love's Travel Stops & Country Stores, Inc. at three separate locations from approximately April 2012 until September 2018. (*See* Complaint ¶ 9 ("Compl."), Docket Entry 1.) Asserting claims on behalf of herself and all others similarly situated as a putative collective action under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), Plaintiff alleges that Defendant had a common policy and practice of paying

---

[1] The undersigned will recommend that Plaintiff's original motion (Docket Entry 97) be terminated as moot.

its female OMs less than similarly situated male colleagues despite both performing similar duties requiring the same skill level, effort, and responsibility. (Compl. ¶¶ 1, 10-17.)

Plaintiff's duties as an OM included working the cash registers, assisting customers, stocking shelves, cleaning and straightening the store, organizing the store according to detailed corporate directives, and unpacking merchandise delivered from trucks. (*Id.* ¶ 10.) Plaintiff was paid an annual base salary of $45,000. (*Id.* ¶ 13.) Plaintiff alleges that upon information and belief, Defendant paid one of Plaintiff's male counterparts a salary of $53,000 per year while performing essentially the same duties and working less hours than Plaintiff. (*Id.* ¶¶ 17-19.) In addition, the male counterpart had substantially less tenure with Defendant and had less relevant work experience than Plaintiff. (*Id.* ¶ 18.) Defendant denies any liability or wrongdoing of any kind under the EPA and asserts various defenses. (*See* Answer, Docket Entry 13.)

## II. PROCEDURAL HISTORY

The parties have engaged in extensive litigation in this matter. Plaintiff filed her complaint on December 6, 2019. (Docket Entry 1.) Defendant filed an answer on January 13, 2020. (Docket Entry 13.) After the initial pretrial conference hearing and consideration of the parties' Individual Rule 26(f) Reports, the Court ordered a bifurcated discovery schedule and required the parties to submit a Joint Rule 26(f) Report. (*See* Text Order dated 5/21/2020.) The Court thereafter approved the parties' Joint Report with a few modifications. (Docket Entry 31.) As a result of the order, the first phase of discovery commenced on July 13, 2020, and was limited to the issue of whether Plaintiff and Opt-in Plaintiffs were "similarly situated" such that Plaintiff's claims could be conditionally certified

as a collective action for notice purposes. (*See id.*; *see also* Docket Entry 30 at 2.)[2] Discovery relating to the merits of the claim was also allowed. (Docket Entry 30 at 2.)

During Phase I of discovery after preliminary negotiations and conferrals, Plaintiff filed a motion to compel with the Court on September 30, 2020. (*See* Docket Entry 34.)[3] A few days later, the parties filed a joint motion to stay deadlines in this matter as they agreed to attend a mediation with mediator Hunter Hughes, an experienced employment law mediator. (*See* Docket Entries 37, 38.) The motion was granted (Text Order dated 10/6/2020), and the mediation occurred on October 14, 2020. The parties did not resolve the case, but Defendant subsequently agreed to consent to conditional certification of a collective action under the EPA. (Docket Entry 39.) In doing so, Defendant did not concede that Plaintiff satisfied her burden for conditional certification. (*Id.*)

On December 16, 2020, this Court conditionally certified the action as a collective action pursuant to 29 U.S.C. § 216(b) for notice purposes only. (*See* Docket Entry 49.) The notice period closed on April 12, 2021, and at such time, there were approximately 102 OMs participating in this action. (*See* Docket Entry 99 at 2.) The parties submitted a Joint Proposed Discovery Management Order with several points of disagreement. (Docket Entry 75.) The Court thereafter entered an order on Phase 2 of the bifurcated discovery process, which focused on the merits of the claims and defenses in this matter, based on a sample of OMs who had joined the case as Opt-In Plaintiffs. (Docket Entry 76.) During

---

[2] Unless otherwise noted, all citations in this recommendation refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[3] The original deadline for Phase 1 discovery was September 1, 2020. (*See* Docket Entry 31; Docket Entry 30 at 2.) However, the parties requested an extension of said deadline, which was granted in part. (*See* Docket Entry 33; Text Order dated 8/28/2020.)

3

this period, Plaintiff renewed her motion to compel discovery from Defendant. (Docket Entry 88.)

Before this motion could be resolved by the Court, the parties requested another stay of this action to conduct a second mediation. (Docket Entry 91.) The case was stayed. (Text Order dated 9/10/2021.) While the parties did not settle at mediation, on October 6, 2021, the parties reached an agreement in principle to resolve the claims at issue in this matter. (Docket Entry 92.)

The Court thereafter granted several motions to extend the stay and to allow time for the parties to file their motion for settlement approval. (Text Orders dated 10/8/2021; 11/18/2021; 12/9/2021; 1/4/2022; 1/10/2022.) On January 27, 2022, Plaintiffs filed their amended unopposed motion to approve settlement agreement, including award of attorneys' fees and costs seeking an order from the Court to (1) find the parties' settlement of this EPA collective action is fair, reasonable, and just; (2) approve the parties' Settlement Agreement and all of its terms; (3) authorize the Settlement Administrator to send notices and issue payments pursuant to the terms of the Settlement; (4) dismiss this action with prejudice, and retain jurisdiction to enforce the settlement until the conclusion of the settlement approval process; and (5) enter any other relief that this Court deems just and proper. (Docket Entry 98.)

## III.     DISCUSSION

### Settlement Approval

This action alleges that Defendant violated the EPA by paying male employees more than female employees despite both performing similar duties that require the same skill

level, effort, and responsibility. "The EPA prohibits gender-based discrimination by employers resulting in unequal pay for equal work." *U.S. Equal Employment Opportunity Comm'n v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018) (citing 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)) (footnote omitted). The EPA is part of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and "uses the FLSA enforcement scheme." *Bell-Holcombe v. Ki, LLC*, 582 F. Supp. 2d 761, 763 (E.D. Va. 2008). The settlement of claims involving FLSA violations must be approved by the Court or the Department of Labor. *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 462 (4th Cir. 2007).

In the instant matter, the Court may only approve a proposed EPA settlement if it "is a fair and reasonable [resolution] of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982) (emphasis added).

A. Bona Fide Dispute

When determining if there has been a *bona fide* dispute in an EPA settlement matter, the Court should look to the pleadings and the proposed settlement agreement. *Duprey v. Scotts Co. LLC*, 30 F.Supp.3d 404, 408 (D. Md. 2014). "A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial." *Hall v. Higher One Machs., Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016) (citing *Lynn's Food Stores*, 679 F.2d at 1354). Here, the Complaint, answer, and representations in the Proposed Settlement Agreement demonstrate that a bona fide dispute exists as to Defendant's liability pursuant to the EPA for paying female OMs less than their male counterparts for performing equal work.

5

B. Fairness and Reasonableness of the Proposed Settlement

Courts consider several factors in determining whether an FLSA settlement is fair and reasonable, including:

> (1) the extent of discovery that has taken place;
>
> (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation;
>
> (3) the absence of fraud or collusion in the settlement;
>
> (4) the experience of counsel who have represented the plaintiffs;
>
> (5) the probability of plaintiffs' success on the merits[;] and
>
> [(6)] the amount of the settlement in relation to the potential recovery.

*LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citation omitted); *see also Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 502-03 (M.D.N.C. 2018). "There is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310(AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (unpublished) (internal quotations and citation omitted).

Here, the Settlement Agreement provides that Defendant shall pay the settlement amount which will be based upon the data produced by Defendant, which reflects the number of workweeks Plaintiffs worked as Operations Managers from December 6, 2016, through December 2, 2021. (*See* Settlement Agreement ("S.A.") § 1.11, Docket Entry 99-1.)

6

In reviewing the factors above, the undersigned first concludes that extensive discovery took place. The parties conducted significant discovery before reaching the proposed settlement. After completing Phase One of the bifurcated discovery, there were 102 OMs participating in this action. (Docket Entry 99 at 2.) Discovery included interviewing OMs and Defendant's employees, analyzing pay and time records, and examining large volumes of data including internal records. (Declaration of Marc S. Hepworth, Docket Entry 99-3 at 4-5.) Also, as noted above, the parties litigated a motion to compel. Based on this set of facts, "it is clear that the Parties had adequate time to conduct sufficient discovery to fairly evaluate the liability and financial aspects of [the] case." *Lomascolo*, 2009 WL 3094955, at *11 (internal quotations and citation omitted).

Next, the stage of the proceedings and the complexity, expense, and likely duration of continued litigation all favor approving the settlement. The Court has already ruled on a motion for conditional certification, a motion to compel, and granted two motions to stay for mediation purposes. The parties engaged in two separate private mediation sessions, and ultimately reached an agreement in principle to resolve the claims at issue in the instant lawsuit. If the settlement is not approved, Plaintiff faces risks regarding being able to sustain summary judgment and would have to proceed to trial. (*See* Docket Entry 99 at 9.) If the parties proceeded to trial, Plaintiff and the collective members face the risk of not persuading a jury that they were unequally paid for equal work due to potentially conflicting documents regarding the qualification of the Opt-in Plaintiffs. (*Id.*) Thus, this factor weighs in favor of approving the settlement.

Next, there is no evidence of fraud. Indeed, "[i]n the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred." *McNeil v. Faneuil, Inc.*, No. 4:15CV81, 2017 WL 5711439, at \*5 (E.D. Va. Sept. 25, 2017) (citation omitted). Also, Plaintiff's counsels are experienced in FLSA matters. Plaintiff and those individuals who have joined in this action are represented by attorneys from different law firms with decades of combined experience. (Docket Entry 99 at 20; *see also* Hepworth Decl. at 8-11; Declaration of Gregg I. Shavitz ¶¶ 6-14, Docket Entry 99-4.) Each law firm has experience in various forms of collective and class action suits, and the proposed settlement appears to be the result of arms-length bargaining between counsel.

The undersigned next considers the probability of Plaintiff's success on the merits which favors acceptance of the settlement. Both parties contend that even after extensive discovery and development of the factual record, serious questions of fact and law remain which placed the ultimate outcome of the litigation in doubt. (Docket Entry 99 at 9.) Lastly, the amount of the settlement in relation to the potential recovery is fair and weighs in favor of final approval. The total settlement is $1,137,500.00. (S.A. § 1.11.) This amount includes payments to the collective action members, a service payment to the named Plaintiff, the employer's share of payroll taxes, settlement administrative costs, and attorneys' fees and expenses. (*Id.*) Plaintiff represents that the maximum amount that could have been collected under any calculation was $3,562,200.49, inclusive of liquidated damages. (Docket Entry 99 at 19.) However, there remain risks of complete recovery for the collective action members. (*See id.* at 9, 19-20.)

Thus, having considered the relevant factors, the settlement reached by the parties is a fair and reasonable resolution.

## **Award of Attorneys' Fees and Costs**

"Under the FLSA, the court is authorized to award 'a reasonable attorney's fee to be paid by the defendant,' and costs of the action, in addition to any judgment awarded to the plaintiff." *Kirkpatrick*, 352 F. Supp. 3d at 503 (citing 29 U.S.C. § 216(b); *Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09-CV-00058, 2010 WL 1813497, at *3-4 (W.D. Va. May 5, 2010)). Courts within the Fourth Circuit have utilized two approaches for calculating attorney's fees: the lodestar method and the percentage of the fund method. *Id.* at 504.

> The percentage of the fund method provides that the court award attorneys' fees as a percentage of the common fund, while the lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund, then to multiply that figure by a reasonable hourly rate.

*Id.* (internal quotations and brackets omitted.) Irrespective of the method, the Court generally considers twelve factors in determining the overall reasonableness of an award of attorney's fees in FLSA cases:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Dickey v. R.R. Donnelley & Sons Co.*, No. 1:18CV920, 2021 WL 1169245, at *4 (M.D.N.C. Mar. 26, 2021) (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

Here, the collection action members' counsel ("Collective Counsel") seek one-third of the settlement amount for attorneys' fees, which is $379,166.67, and reimbursement of $34,857.12 for their costs and expenses. (Docket Entry 99 at 11; *see also* Hepworth Decl. at 6-8; Shavitz Decl. ¶¶ 20-30.) Considering the *Barber* factors, Collective Counsel spent over two years litigating the claims in this matter and collectively have invested almost 1,000 hours of work. (Hepworth Decl. at 6; Shavitz Decl. ¶¶ 17, 20.) This work encompassed investigating the facts of the case, interviewing OMs, drafting and responding to additional written discovery requests, negotiating a stipulation for conditional certification and the issuance of notice, creating a damages model and performing damage calculations in preparation for mediation, and preparing for settlement. (Hepworth Decl. at 5; Shavitz Decl. ¶¶ 16-17.) The work involved was difficult because Collective Counsel faced challenges that come with the nature of equal pay lawsuits regarding evidentiary proof of pay disparity based upon gender. (Docket Entry 99 at 17).

In addition, during the two-year period, the work performed by Collective Counsel placed significant demands on Collective Counsel's time and resources. (Hepworth Decl. at 3, 6; Shavitz Decl. ¶¶ 15-17.) Also, one of the firms representing Plaintiff customarily charges a one-third contingency fee in common fund cases. (Shavitz Decl. ¶ 18.) Further, the Court has previously discussed the maximum amount which the collective action members could have collected in comparison to the results obtained. This too supports the reasonableness of the attorneys' fees.

Another factor supporting the reasonableness of attorneys' fees is the experience and ability of Collective Counsel. In this case, counsel collectively have over decades of legal experience and the firms have been involved in dozens of class and collective actions. (Hepworth Decl. at 8-11; Shavitz Decl. ¶ 12.) Also, the attorney fee is one-third of the common fund and reflective of awards in similar cases. *See Dickey*, 2021 WL 1169245, at *4 (unpublished) ("[A]n award of one-third of a common fund in FLSA actions appears to be a fairly common percentage[.]") (internal quotations omitted) (quoting *DeWitt v. Darlington Cnty.*, No. 4:11-cv-740-RBH, 2013 WL 6408371, at *9 (D.S.C. Dec. 6, 2013) (unpublished)).

Further, Named Plaintiff engaged Collective Counsel's services well over two years ago, following their representation of her in a FLSA collective action.[4] (Docket Entry 99 at 21.) The undersigned also notes that Collective Counsel did not find this case undesirable to prosecute. Nevertheless, the *Barber* factors above weigh in favor of a finding that the requested fee is reasonable.

In addition to the *Barber* factors, no collective action members have objected to the Collective Counsel's request for a fee of $379,166.67, which provides further support for the fee request. *See Lewis v. Precision Concepts Grp. LLC*, No. 1:18CV64, 2021 WL 7185505, at *7 (M.D.N.C. Mar. 23, 2021) (unpublished).

Lastly, Plaintiff's motion represents that the requested attorneys' fees amount is an approximate 26% reduction of the calculated "lodestar" amount of $510,265.50. (Docket

---

[4] Plaintiff raises this point to address the nature and length of the professional relationship between the attorney and client. "The meaning of this factor, however, and its effect on the calculation of a reasonable fee has always been unclear. . . . Courts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial." *Kirkpatrick*, 352 F. Supp. 3d at 506 n.4 (quoting *Bruner v. Sprint/United Mgmt. Co.*, Nos. 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *9 (D. Kan. July 14, 2009)).

Entry 99 at 15-16.) "A lodestar cross-check of the fees request confirms its reasonableness." *Kirkpatrick*, 352 F. Supp. 3d at 506 (citation omitted). Its purpose "is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 467 (D. Md. 2014) (citation omitted). "To calculate the lodestar number the court multiplies a reasonable hourly rate by the number of hours reasonably expended." *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 850 (D.S.C. 2016). Collective Counsel's request for $379,166.67 of the proposed Settlement Fund is less than their calculated lodestar, which is approximately $510,265.50. (Docket Entry 99 at 15.)[5] Thus, "a lodestar multiplier is not necessary." *Lewis*, 2021 WL 7185505, at *7. Indeed, "[l]odestar multipliers of less than 2, as is the case here [approximately 0.74], have been found to be 'modest' in the Fourth Circuit, further supporting [Collective] Counsel's requested award." *Id.* (citations omitted). *See also Kirkpatrick*, 352 F. Supp. 3d at 507 ("Since collective counsel's lodestar multiplier [of approximately 0.58] is far below those generally accepted, their requested fees are reasonable.").

In sum, the requested attorneys' fees and the reimbursement for expenses and costs are reasonable.

---

[5] "When using the lodestar method only as a cross-check, the court need not apply the exhaustive scrutiny normally required by that method." *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 469 (S.D.W. Va. 2010) (internal quotations and citation omitted). "Nevertheless, the Court must have enough information for its review of the time and rate submission to be a meaningful cross-check." *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *7 (M.D.N.C. May 9, 2016) (unpublished). The Court has reviewed the billing records provided *in-camera* by Collective Counsel. There appears to be a calculation error in the Hepworth declaration regarding an associate attorney's total charges. (*See* Hepworth Decl. at 6-7 (Associate Rebecca Predovan's total fee's reflecting $43,810 rather than $75,335).) The amount of $75,335 is noted in the *in-camera* documents. Further, the total amount presented in counsel's declaration for this firm accurately accounts for Ms. Predovan's appropriate calculation.

### Service Award

The parties' settlement agreement provides for a service payment up to $7,500 for Plaintiff Kristen Leann Horton. (*See* S.A. § 1.11(b).) "To determine whether [a service] payment is warranted, the court should consider the actions the [named] plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Kirkpatrick*, 352 F. Supp. 3d at 507-08 (quoting *Kirven v. Cent. States Health & Life Co. of Omaha*, No. CA 3:11-2149-MBS, 2015 WL 1314086, at *13 (D.S.C. Mar. 23, 2015)). Here, Plaintiff Kristen Leann Horton was instrumental during the pleadings stage and the discovery process, and she made herself available to provide information needed during settlement negotiations. (Docket Entry 99 at 10-11; *see also* Docket Entry 100-1.) Ultimately, this service award is "in recognition of [Plaintiff Kristen Leann Horton's] assistance to [Collective] Counsel and reflect[s her] contribution to achieving the [s]ettlement on behalf" of the collective action members. *Lewis*, 2021 WL 7185505, at *7. Thus, it should be paid according to the terms of the Settlement Agreement.

### IV. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Kristen Leann Horton's amended unopposed motion to approve settlement agreement, including award of attorneys' fees and costs (Docket Entry 98) be **GRANTED** such that: (1) the Parties' Settlement Agreement and all of its terms be approved and the Settlement Administrator be authorized to send the notices and issue payments pursuant to the terms of the Settlement Agreement; (2) this Court retains jurisdiction over this case to enforce the Settlement

Agreement until the conclusion of the settlement administration process; (3) Plaintiff's original unopposed motion to approve settlement agreement, including award of attorneys' fees and costs (Docket Entry 97) be **TERMINATED** as **MOOT**; and (4) this action be dismissed with prejudice.

/s/ Joe L. Webster<br>United States Magistrate Judge

July 7, 2022
Durham, North Carolina